IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1999 SESSION

FILED

March 24, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. No. 03C01-9711-CR-00495 |
| Appellee, | * | SULLIVAN COUNTY |
| VS. | * | Honorable Phyllis H. Miller, Judge |
| ARTHUR IRESON, | * | (Facilitation of aggravated burglary) |
| Appellant. | * | |

For Appellant:

Thomas R. Bandy, III
Attorney for Appellant
P.O. Box 1127
555 E. Main Street, Suite 102-F
Kingsport, TN  37660

For Appellee:

John Knox Walkup
Attorney General and Reporter

Ellen H. Pollack
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN  37243-0493

Edward Wilson
Assistant District Attorney General
P.O. Box 526
Blountville, TN  37617

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Arthur Ireson, was convicted of facilitation of aggravated burglary, a Class D felony. The trial court imposed a Range II sentence of eight years in the Department of Correction to be served concurrently with a prior unserved sentence. In this appeal of right, the defendant challenges the sufficiency of the convicting evidence and the sufficiency of the charging instrument.

We affirm the judgment of the trial court.

On February 21, 1996, Detective Tim Smith of the Sullivan County Sheriff's Department investigated a burglary at the residence of the victim, Gerald Clark. Upon his arrival at the scene, Detective Smith discovered evidence of forced entry through the rear door of the residence; while inside, he found several guns wrapped in a blanket behind a couch. The glass of a gun case had been shattered and the case was empty. Detective Smith found jewelry behind a displaced couch cushion. The victim identified the defendant and Timothy Henry as suspects. Henry was arrested on the same date of the burglary.

On November 1, 1996, the defendant was arrested. In his statement to Detective Smith, the defendant admitted that he had accompanied Henry to the victim's residence. He told Detective Smith that he saw Henry walk around the side of the house. When the defendant followed after Henry, he saw that the door had been kicked ajar and that Henry was inside. The defendant confirmed that he entered the residence even though he knew it was wrong. He maintained that he went no further than the living room. While the two men were inside the residence, the victim and his son, Jeffery, arrived. The defendant, who said he did not know either of the victims, claimed that he and Henry left in his Camaro, taking nothing.

2

At trial, the victim recalled that as he and his son returned home the day of the offense, he noticed a black Camaro parked across the street. While his son walked over to inspect the vehicle, the victim discovered that the back door of the house was open. He testified that when he entered his residence, he saw Henry, whom he had known for at least ten years, standing in the living room; when he heard noise from another bedroom, he turned to see the defendant. The victim remembered telling the defendant and Henry to wait while he called the sheriff but the two men fled in the Camaro. Afterward, the victim located his guns wrapped in a comforter behind a couch. The gun case had been smashed. The victim testified that neither the defendant nor Henry had permission to be in his residence.

Jeffery Clark testified that he and the victim returned to their residence at approximately 3:00 P.M. He explained that when he saw the door to his Jeep was open and walked across the street to check on it, he heard the victim yell and saw the defendant and Henry emerge from the rear door of his house. Jeffery recognized both the defendant and Henry whom he had known from grade school. When the victim went inside to call the sheriff, the defendant and Henry fled the scene.

At trial, the defendant testified that he worked for Helping Hands as a Certified Nurse's Aide. He explained that on the day of the offense, a patient he attended was in the hospital so he decided to visit Henry on his way home. He admitted that he drove Henry to the victim's residence but claimed that he did not know his intentions. The defendant contended that he waited while Henry walked around the house and that he walked into the living room only after Henry called him. At that point, he heard someone ask, "[W]hat are you doing in my house?" He claimed that he turned to the victim and replied that he did not know and that he had

3

only driven Henry there. The defendant then saw Henry emerge from the back bedroom, remove jewelry from his pocket, and place it under a couch cushion. When the victim picked up the telephone to call "the law," the defendant overheard Henry threaten to kill the victim if he placed a call to the sheriff. The defendant admitted that he left the scene with Henry and acknowledged, because he feared the consequences of the incident, he and his wife left the state that very night. The defendant admitted that he had four prior felony convictions, three for aggravated burglary and one for aggravated robbery.

Tim Henry, an inmate with the Tennessee Department of Correction, admitted prior convictions for two attempted murders, aggravated burglary of the victim's residence, auto burglary, and theft under five hundred dollars. He testified that he asked the defendant to accompany him to the victim's residence to look at a Jeep. Henry maintained that the defendant knew nothing of his intentions. He claimed that the defendant waited in the car while Henry kicked in the back door, entered the house, and removed guns from the gun cabinet. He explained that he called for the defendant only when he realized he could not carry the guns by himself. He admitted that the defendant entered the residence, followed shortly thereafter by the victim and his son. Henry testified that the defendant never touched anything in the house and was unaware that a theft was in process.

I

The defendant has challenged the sufficiency of the evidence. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are

4

matters entrusted to the jury as trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

The defendant was convicted of facilitation of aggravated burglary. "A person commits [aggravated] burglary who, without the effective consent of the property owner," enters a habitation "with intent to commit a felony or theft." Tenn. Code Ann. §§ 39-14-401, -402 & -403. A person commits facilitation of a felony when

> knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [Tenn. Code Ann.] § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony.

Tenn. Code Ann. § 39-11-403(a).

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(b).

It is uncontested that the defendant drove Henry to the victim's residence and waited. The defendant entered the residence when Henry called even though he admitted to Detective Smith that he knew it was wrong to enter the house. By his own testimony, he watched Henry remove jewelry from his pocket and hide it between the couch cushions. The defendant admits that he drove Henry

5

home and that he fled to South Carolina to hide from the authorities. From these facts, it was entirely reasonable for the jury to have concluded that the defendant was aware of circumstances as soon as he entered the house and that he knowingly furnished substantial assistance to Henry. That is sufficient to support every element of the offense.

## II

Next, the defendant claims that the presentment was fatally deficient because it failed to fully state the crime. The state responds that the presentment fully satisfies the statutory and constitutional requirements of notice and form.

The presentment charged as follows:

[T]hat [the defendant] on or about February 21, 1996 ... did unlawfully and feloniously enter the habitation of Gerald Clark without the effective consent of the owner ... and with the intent to commit a theft therein, contrary to T.C.A. Section 39-14-403 ....

The presentment includes the essential elements of aggravated burglary and makes reference to the relevant statutory section. See State v. Carter, ___ S.W.2d ___, No. 02S01-9705-CR-00045 (Tenn., at Jackson, Feb. 1, 1999). Moreover, the presentment is sufficient to put the defendant on notice of all lesser offenses, including facilitation of aggravated burglary. See State v. Parker, 932 S.W.2d 945 (Tenn. Crim. App. 1996). Facilitation of aggravated burglary was fairly raised by the evidence. In consequence, we conclude that the presentment was sufficient.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Presiding Judge

6

CONCUR:


_____
James Curwood Witt, Jr., Judge


_____
John K. Byers, Senior Judge